Wilsey *v.* Dennis.

[MONROE GENERAL TERM, March 7, 1864.  *E. Darwin Smith, Welles* and *James C. Smith,* Justices,

————o ◊ •————

## WILSEY *vs.* DENNIS,

A delivery always implies an acceptance by the person to whom the delivery is made; and although where a deed or mortgage, or an instrument purporting to be such, is properly acknowledged and recorded, the presumption is that it has been duly delivered to the grantee or mortgagee, and that it is, in legal effect, what by the record it purports to be; yet such presumption is only *prima facie,* and may be rebutted by parol or other evidence, and shown to have never been delivered, or, for any other reason, to possess no legal existence or validity.

Where two mortgages, given to secure a loan, after having been duly executed, acknowledged and recorded, were successively sent to the agent of the mortgagee, who condemned and rejected them, severally, and returned them to the mortgagor, on the ground that the name of the mortgagee was not correctly stated; *Held* that the appearance of such mortgages upon the record was, under the circumstances, no objection to the title, of which a purchaser could avail himself as an excuse for non-performance.

Wilsey *v.* Dennis.

Neither is the filing of a notice of *lis pendens* in an action which has since been compromised and settled by the parties, a valid objection to the title, where there is no proof that there was any foundation for the claim it asserted.

Where, by the contract between vendor and purchaser, the former agrees to convey the premises, by a "warranty deed," the tender of a deed containing the common covenant of warranty is a compliance with the agreement.

That is a covenant for quiet enjoyment; and is what is understood by the term "warranty deed."

That term does not include a deed with a covenant against incumbrances.

APPEAL from a judgment entered upon the report of a referee. The complaint alleged the making of an agreement in writing between the parties, dated January 13, 1859, which recited that the defendant had sold to the plaintiff his farm, situated in Lyons for the price of $3000, to be paid as follows: $138 down; $862, with interest, on the 1st of April, 1859; $500 in two years from April 1, 1859, with interest on all sums unpaid; and to pay a certain mortgage of $700 then on the farm, &c. and the balance, $800, in three equal annual payments, with annual interest on the whole sum due at each payment; the first of said payments to be made April 1, 1862. The defendant was to give a warranty deed on the 1st day of April, 1859, or as soon as the said $862 and interest should be paid, to be signed by himself and wife. The complaint then alleged that in accordance with said agreement the plaintiff, on the day of the date thereof, paid to the defendant $138, the first payment mentioned therein; and that on the 1st of April, 1859, the plaintiff tendered to the defendant the sum of $862, the second payment mentioned in the agreement, and offered to pay or secure the balance of the payments in accordance with the agreement; at the same time demanding a conveyance of the farm, free of all incumbrance, by a good and sufficient warranty deed; that the defendant neglected and refused to perform the agreement, on his part; and that he could not convey a good and perfect title in fee to said farm,

free of all incumbrance, but on the contrary the same was subject to various defects, to wit, to certain mortgages [which are mentioned and described in the referee's findings of facts,] and a notice of lis pendens [also mentioned in said findings of facts, below.] The complaint then alleged a breach of the agreement by the defendant, and claimed to the amount of $138 and interest.

The answer was a general denial of the allegations of the complaint; alleged performance by the defendant; and set up by way of counterclaim the making of the agreement by the plaintiff to purchase the premises; the execution of a good and sufficient deed by the defendant and his wife, to the plaintiff; a tender thereof to the plaintiff; the demand of the sum of $862 from him; and the plaintiff's refusal to accept such deed or pay the installment of $862 and interest.

The referee found the following facts: That on the 13th day of January, 1859, the defendant, being the owner in fee of the premises described in the complaint, made and entered into the agreement set forth in the complaint, under the hands and seals of the parties. That on the 2d or 3d of April, 1859, the parties met, at Lyons, for the purpose of mutually performing the contract. That the plaintiff then found recorded in the clerk's office of Wayne county, a mortgage of the premises agreed to be sold and conveyed, executed by the defendant Dennis and wife to Eliza Bronson, guardian of Catharine Woolsey, dated January 28, 1856, recorded January 29, and conditioned for the payment of $700 and interest. Also, a mortgage of the same premises, dated January 28, 1856, recorded March 15, 1856, and conditioned for the payment of $700 and interest. Also, a mortgage of the same premises, dated January 28, 1856, recorded April 24, 1856, and conditioned for the payment of $700 and interest. That the plaintiff informed the defendant that he had found these matters of record, and the defendant alleged that he had given but one such mortgage. The performance of the contract was then postponed one week, when the parties again

came to Lyons for the purpose of performance, and the plaintiff having made further search at the county clerk's office, found on file there a notice of pendency of an action in the supreme court, wherein one Joseph D. Dennis was plaintiff, and the defendant Frederick A. Dennis, and his wife, were defendants, filed April 26, 1858, in which notice was given that said action was brought for the purpose (among other things) of having the deed under which the defendant claimed title to a part of the premises aforesaid, declared fraudulent and void, as against the plaintiff in that action as a creditor of the grantor in such deed. That the plaintiff informed the defendant of this notice of *lis pendens.* That the plaintiff was on the same day informed by the agent of the mortgagor, and through whom the loan was made, that there was in fact but one mortgage on the premises, and that by reason of errors in names, in the first two mortgages that appeared of record, they had never been accepted by the mortgagee. And the referee found that this information was in fact true. And that on the same day the defendant tendered to the plaintiff a deed of the premises described in the contract, which deed was dated April 1, 1859, and acknowledged on the 5th day of April, 1859, and contained the following covenant: "And the said Frederick A. Dennis doth hereby covenant and agree to and with the said party of the second part, his heirs and assigns, that the premises thus conveyed, in the quiet and peaceable possession of the said party of the second part, his heirs and assigns, he will forever warrant and defend against any person whomsoever, lawfully claiming the same, or any part thereof." The referee also found that at this time, the aforesaid action, in which the said notice of *lis pendens* was filed, was still pending, upon an issue which had been made by the answer of the defendant therein. That the plaintiff herein refused to accept the aforesaid deed as a performance on the part of the defendant, by reason of the two records of mortgages, and of said notice of *lis pendens,* and thereupon removed from the premises,

but was prepared to perform, and offered to perform said contract, if the defendant would convey the premises discharged of the said recorded mortgages and notice of *lis pendens;* which the defendant did not and could not do. That the plaintiff paid to the defendant, on said contract, on the 15th day of January, 1859, $138, and on the same day he paid $14 for interest on the $700 mortgage mentioned in the contract, which sums, with interest, amounted to $198.11, which had been demanded of the defendant.

The referee's conclusions of law were that the defendant was not in a condition to perform the contract on his part, at the time fixed for its performance, or at the time to which performance was postponed; and that for that reason the deed tendered by him was not a warranty deed of the farm, within the meaning of the contract. The referee accordingly reported that the plaintiff was entitled to judgment against the defendant, for $198.11 and costs. The defendant appealed from the judgment.

*T. R. Strong,* for the appellant.

*Geo. H. Arnold,* for the respondent.

*By the Court,* WELLES, J. It is abundantly clear, from the evidence, that there was but one mortgage of $700 upon the farm sold by the defendant to the plaintiff, and that one was given to Ann Eliza Bronson, guardian of Catherine Woolsey. This, the plaintiff was bound by the agreement to pay as a part of the foreclosure price of the farm. The records of mortgages of Wayne county contained two other records of mortgages, precisely like the one mentioned, with a slight difference only in the name of the mortgagee, in one of them. It happened on this wise. The defendant had negotiated a loan of $700, with Mrs. Ann Eliza Bronson, through her agent, to be secured by the bond of the defendant and a mortgage upon the farm in question. A bond and

mortgage were accordingly prepared, which were duly exe-
cuted, acknowledged and recorded, and were sent, with a
certificate of search of title, to the agent of Mrs. Bronson,
in which the name of the mortgagee was stated "Eliza Bron-
son." This mortgage was condemned and rejected by the
agent of Mrs. Bronson, on the ground that the name of the
mortgagee was not correctly stated. That it should have
been Ann Eliza, instead of Eliza Bronson, and the mortgage
was returned to the defendant, or his attorney; whereupon
the name of the mortgagee was corrected by inserting "Ann"
before "Eliza," in the same mortgage so condemned and
returned. The same was again recorded and sent to the agent,
who again condemned and returned it, requiring a new mort-
gage to be made out with the mortgagee's name properly
inserted. This was done; a new mortgage was duly executed
by the defendant and his wife, was duly acknowledged and
recorded and forwarded to the agent, who accepted the same;
and the money was immediately advanced upon it; where-
upon the loan, and the securities therefor, became con-
summated. The first mortgage having been twice recorded,
accounts for the appearance upon the record of two mortgages
besides the one which was accepted, and was the only one
possessing the slightest validity, or which had ever any legal
existence as a mortgage, or other binding obligation on
any one.

In the eye of the law the first one was never delivered in
either of the appearances which it exhibited upon the record,
or otherwise. A delivery always implies an acceptance by
the person to whom the delivery is made; and although
where a deed or mortgage, or an instrument purporting to be
such, is properly acknowledged and recorded, the presump-
tion is that it has been duly delivered to the grantee or mort-
gagee, and that it is, in legal effect, what by the record it
purports to be; yet such presumption is only *prima facie*,
and may be rebutted by parol or other evidence, and shown

to have never been delivered, or, for any other reason, to possess no legal existence or validity.

The evidence shows that it was a rule of the mortgagee, or her agent, with whom the transaction was negotiated, to require the mortgage to be recorded, before any money was advanced upon the faith of it; and this is known to be the practice of capitalists in loaning money on mortgage security.

When the parties in this case met, at Lyons, about the 6th of April, the plaintiff to pay the $862, and the defendant to deliver the deed in pursuance of the agreement, the two records of the defunct mortgage had been discovered by the plaintiff, and the circumstances above detailed in relation to the first two records were stated and explained to the plaintiff. On the same day a further discovery was made, by an examination in the county clerk's office. It was a notice of *lis pendens*, filed April 26, 1858, some ten months before the agreement between these parties for the sale and purchase of the farm was entered into. It was in an action between one Joseph D. Dennis, as plaintiff, and the present defendant and his wife, as defendants. The notice stated the object of the action was to set aside as fraudulent and void certain judgments, and to have a certain sheriff's deed declared fraudulent and void, and to annul the said judgments and deed, together with various other things in the notice specified; which action, if successful, would impair the present defendant's title to the farm in question, or some part of it. It appeared that the action mentioned in the notice of *lis pendens* was defended. It was referred to, and noticed for trial before, a referee. It lay along a year or more, and was finally compromised and settled by the parties.

The defendant in this action caused a warranty deed, duly executed by himself and wife, for the premises in question, to be tendered to the plaintiff at the time the $862 was due and payable, and demanded payment of the last mentioned sum, but the plaintiff refused to make such payment or to receive the deed, but declared himself prepared to make the

Wilsey *v.* Dennis.

payment if the defendant would give him a good unincumbered title for the farm. There was no evidence tending to impair the defendant's title, and really no incumbrance except the one mortgage of $700 which the plaintiff was bound by the agreement to pay. The other two alleged mortgages had really no legal existence as such. The defendant was bound by the contract, upon payment of the $862, to give the plaintiff a warranty deed signed by himself and wife, and such a deed he tendered the plaintiff. The notice of *lis pendens* was in no sense an incumbrance upon the defendant's title. The utmost that could be said of it was, that it was a cloud upon his title. The defendant was in peaceable possession, and was ready to give like peaceable possession to the plaintiff. And more than that, the plaintiff had gone into possession, under the contract, before the time for that purpose provided in the contract. Afterwards, upon discovering the two records of the non-existent mortgage, and the notice of *lis pendens*, he abandoned the possession, refused to make further payment, and brought this action to recover back the $138 which he paid at the time of entering into the agreement.

It seems to me he had no color for maintaining the action, but that he is bound to carry the contract into full execution by making the remaining payments and receiving the deed. There can be no doubt, as it seems to me, that the deed tendered by the defendant to the plaintiff, if it had been accepted, would have conveyed the fee simple of the land. The covenant contained in it was for quiet possession, and would, if necessary, have protected the plaintiff against the alleged incumbrances, in case they had proved to be valid and effective and the plaintiff should be evicted under them, or either of them. The contract of sale contained an implied warranty that the vendor was able to convey a good title to the land which he thereby sold. (*Burwell* v. *Jackson,* 5 *Seld.* 535.) Beyond that, the rights of the parties must be settled by the agreement between them. In the contract

---

Wilsey *v.* Dennis.

---

between these parties, the plaintiff agreed to take a warranty deed from the defendant and his wife. The deed tendered contained the common covenant of warranty. It was a covenant for quiet enjoyment. That is what is always understood, certainly by the popular mind, by the term warranty deed. If the term included a deed with a covenant against incumbrances, there would be no use in ever inserting the latter in a deed. In the present case, if the existence of a *claim* of title or of a lien to or upon the land would justify the plaintiff in rescinding the contract, he is bound to show that such claim is *valid* and *legal*.

With respect to the notice of *lis pendens,* no attempt was made to prove that there was any foundation for the claim it asserted. It appears to have been a perfectly idle and arbitrary claim. I say this, because there is no attempt to show it had any foundation. It seems to me that it can not be that a man is to be injuriously affected by a *mere* claim of a third party to his land, in the absence of any evidence to sustain it.

In the case of the records of what was only the form of a mortgage, the defendant has shown beyond the possibility of doubt, that they do not and can never amount to any thing.

I think the judgment should be reversed, and a new trial ordered, with costs to abide the event.

Ordered accordingly.

[MONROE GENERAL TERM, June 6, 1864. *Johnson, J. C. Smith,* and *Welles,* Justices.]